MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ARMANDO RAMIREZ and EUSTASIO
GONZALEZ, *individually and on behalf of
others similarly situated,*

               *Plaintiffs*,

             -against-

60TH ST. FLEISH GESHEFT INC. (D/B/A
SHAULY'S MEAL MART), JOSEPH
GOLDBERGER , and JOEL GOLDBERGER ,

               *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

      Plaintiffs Armando Ramirez and Eustasio Gonzalez , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through the ir attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against 60th St. Fleish Gesheft Inc. (d/b/a Shauly's Meal Mart), ("Defendant Corporation"), Joseph Goldberger and  Joel Goldberger, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

**NATURE OF ACTION**

      1.    Plaintiffs are former employees of Defendants 60th St. Fleish Gesheft Inc. (d/b/a Shauly's Meal Mart), Joseph Goldberger, and Joel Goldberger.

      2.    Defendants own, operate, or control a meat market, located  at 1973 60th St., Brooklyn, NY 11204 under the name "Shauly's Meal Mart".

3. Upon information and belief, individual Defendants Joseph Goldberger and Joel Goldberger, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the meat market as a joint or unified enterprise.

4. Plaintiffs were employed as butchers at the meat market located at 1973 60th St., Brooklyn, NY 11204.

5. At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked.

6. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

8. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the overtime compensation required by federal and state law and regulations.

9. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

10. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a meat market located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

13. Plaintiff Armando Ramirez ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in Kings County, New York.

14. Plaintiff Ramirez was employed by Defendants at Shauly's Meal Mart from approximately April 2016 until on or about July 14, 2020.

15. Plaintiff Eustasio Gonzalez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in Kings County, New York.

16. Plaintiff Gonzalez was employed by Defendants at Shauly's Meal Mart from approximately 2009 until on or about April 2020.

*Defendants*

17. At all relevant times, Defendants owned, operated, or controlled a meat market, located at 1973 60th St., Brooklyn, NY 11204 under the name "Shauly's Meal Mart".

18. Upon information and belief, 60th St. Fleish Gesheft Inc. (d/b/a Shauly's Meal Mart) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintains its principal place of business at 1973 60th St., Brooklyn, NY 11204.

19. Defendant Joseph Goldberger is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Joseph Goldberger is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Joseph Goldberger possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

20. Defendant Joel Goldberger is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Joel Goldberger is sued individually in his capacity as a manager of Defendant Corporation. Defendant Joel Goldberger possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

21. Defendants operate a meat market located in the Mapleton section of Brooklyn in New York City.

22. Individual Defendants, Joseph Goldberger and Joel Goldberger, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

23. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

24. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

25. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

26. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

27. Upon information and belief, Individual Defendant Joseph Goldberger operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

   a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

   b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c) transferring assets and debts freely as between all Defendants,

   d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

   e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

   f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

28. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

29. In each year from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

30. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the meat market on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

31. Plaintiffs are former employees of Defendants who were employed as butchers.

32. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Armando Ramirez*

33. Plaintiff Ramirez was employed by Defendants from approximately April 2016 until on or about July 14, 2020.

34. Defendants employed Plaintiff Ramirez as a butcher.

35. Plaintiff Ramirez regularly handled goods in interstate commerce, such as meat market and other supplies produced outside the State of New York.

36. Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

37. During the months of April, May, and September of 2016, 2017, 2018, and 2019, Plaintiff Ramirez worked from approximately 5:00 a.m. until on or about 7:00 p.m., Mondays through Thursdays, from approximately 5:00 a.m. until on or about 4:00 p.m., on Fridays, and from approximately 5:00 a.m. until on or about 6:00 p.m., on Sundays (typically 80 hours per week).

38. From approximately August 16th until on or about August 31st and from approximately October 1st until on or about October 15th of, 2016, 2017, 2018, and 2019, Plaintiff Ramirez worked from approximately 5:00 a.m. until on or about 7:00 p.m., Mondays through Thursdays, from approximately 5:00 a.m. until on or about 4:00 p.m., on Fridays, and from approximately 5:00 a.m. until on or about 6:00 p.m., on Sundays (typically 80 hours per week).

39. During the months of June and July of 2016, 2017, 2018, and 2019, Plaintiff Ramirez worked from approximately 9:00 a.m. until on or about 5:00 p.m., Mondays through Thursdays and from approximately 9:00 a.m. until on or about 1:00 p.m., on Fridays (typically 36 hours per week).

40. From approximately August 1st until on or about August 15th of 2016, 2017, 2018, and 2019, Plaintiff Ramirez worked from approximately 9:00 a.m. until on or about 5:00 p.m., Mondays through Thursdays and from approximately 9:00 a.m. until on or about 1:00 p.m., on Fridays (typically 36 hours per week).

41. During the months of November, December, January, February, and March of 2016, 2017, 2018, and 2019, Plaintiff Ramirez worked from approximately 7:00 a.m. until on or about 6:00 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:00 p.m., on Sundays (typically 63 hours per week).

42. From approximately October 16th until on or about October 31st of 2016, 2017, 2018, and 2019, Plaintiff Ramirez worked from approximately 7:00 a.m. until on or about 6:00 p.m.,

Mondays through Fridays and from approximately 7:00 a.m. until on or about 3:00 p.m., on Sundays (typically 63 hours per week).

43. Throughout his employment, Defendants paid Plaintiff Ramirez his wages in a combination of direct deposit and cash.

44. From approximately April 2016 until on or about December 2016, Defendants paid Plaintiff Ramirez $10.50 per hour.

45. From approximately December 2016 until on or about May 2017, Defendants paid Plaintiff Ramirez $11.50 per hour.

46. From approximately May 2017 until on or about October 2017, Defendants paid Plaintiff Ramirez $12.00 per hour.

47. From approximately October 2017 until on or about April 2018, Defendants paid Plaintiff Ramirez $13.00 per hour.

48. From approximately April 2018 until on or about December 2018, Defendants paid Plaintiff Ramirez $14.00 per hour.

49. From approximately December 2018 until on or about April 2019, Defendants paid Plaintiff Ramirez $15.00 per hour.

50. From approximately April 2019 until on or about July 2020, Defendants paid Plaintiff Ramirez $17.00 per hour.

51. Plaintiff Ramirez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

52. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

53. Defendants did not provide Plaintiff Ramirez an accurate statement of wages, as required by NYLL 195(3).

54. Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Eustasio Gonzalez*

55. Plaintiff Gonzalez was employed by Defendants from approximately 2009 until on or about April 2020.

56. Defendants employed Plaintiff Gonzalez as a butcher.

57. Plaintiff Gonzalez regularly handled goods in interstate commerce, such as meat market and other supplies produced outside the State of New York.

58. Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

59. During the months of April, May, and September of 2014, 2015, 2016, 2017, 2018, and 2019, Plaintiff Gonzalez worked from approximately 5:00 a.m. until on or about 7:00 p.m., Mondays through Thursdays, from approximately 5:00 a.m. until on or about 4:00 p.m., on Fridays, and from approximately 5:00 a.m. until on or about 6:00 p.m., on Sundays (typically 80 hours per week).

60. From approximately August 16th until on or about August 31st and from approximately October 1st until on or about October 15th of 2014, 2015, 2016, 2017, 2018, and 2019, Plaintiff Gonzalez worked from approximately 5:00 a.m. until on or about 7:00 p.m., Mondays through Thursdays, from approximately 5:00 a.m. until on or about 4:00 p.m., on Fridays, and from approximately 5:00 a.m. until on or about 6:00 p.m., on Sundays (typically 80 hours per week).

61. During the months of June and July of 2014, 2015, 2016, 2017, 2018, and 2019, Plaintiff Gonzalez worked from approximately 9:00 a.m. until on or about 5:00 p.m., Mondays through Thursdays and from approximately 9:00 a.m. until on or about 1:00 p.m., on Fridays (typically 36 hours per week).

62. From approximately August 1st until on or about August 15th of 2014, 2015, 2016, 2017, 2018, and 2019 Plaintiff Gonzalez worked from approximately 9:00 a.m. until on or about 5:00 p.m., Mondays through Thursdays and from approximately 9:00 a.m. until on or about 1:00 p.m., on Fridays (typically 36 hours per week).

63. During the months of November, December, January, February, and March of 2014, 2015, 2016, 2017, 2018, and 2019, Plaintiff Gonzalez worked from approximately 7:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays, from approximately 7:00 a.m. until on or about 2:00 p.m., on Fridays and from approximately 7:00 a.m. until on or about 3:00 p.m. on Sundays (typically 63 hours per week).

64. From approximately October 16th until on or about October 31st of 2014, 2015, 2016, 2017, 2018 and 2019, Plaintiff Gonzalez worked from approximately 7:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays, from approximately 7:00 a.m. until on or about 2:00 p.m., on Fridays and from approximately 7:00 a.m. until on or about 3:00 p.m. on Sundays (typically 63 hours per week).

65. Throughout his employment, Defendants paid Plaintiff Gonzalez his wages in a combination of check and cash.

66. From approximately January 2015 until on or about December 2016, Defendants paid Plaintiff Gonzalez a salary of $295 per week.

67. From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Gonzalez $16.00 per hour.

68. From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Gonzalez $16.50 per hour.

69. From approximately January 2019 until on or about April 2020, Defendants paid Plaintiff Gonzalez $17.00 per hour.

70. Plaintiff Gonzalez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

71. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

72. Defendants did not provide Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

73. Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

74. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

75. Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked..

76. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

77. Defendants paid Plaintiffs their wages in a combination of direct deposit and cash.

78. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

79. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

80. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

81. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

82. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

83. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

84. Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

85. At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records under the FLSA.

86. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

87. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

88. At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

89. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

90. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

91. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

92. Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

93. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

94. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

95. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

96. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

97. Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

98. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

99. Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

100. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

101. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

102. With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

103. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid overtime compensation and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(i)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(j)     Awarding Plaintiffs damages for the amount of unpaid overtime compensation, and for any improper deductions or credits taken against wages as applicable

(k)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(n)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(o)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(p)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

September 4, 2020

                                         MICHAEL FAILLACE & ASSOCIATES, P.C.

                            By:      /s/ Michael Faillace
                                         Michael Faillace [MF-8436]
                                         60 East 42nd Street, Suite 4510
                                         New York, New York 10165
                                         Telephone: (212) 317-1200
                                         Facsimile: (212) 317-1620
                                         *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
#### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510  
New York, New York 10165  
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200  
Facsimile: (212) 317-1620

August 19, 2020

BY ELECTRONIC SIGNATURE

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.  
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Armando Ramirez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               19 de agosto 2020

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510  
New York, New York 10165

Telephone: (212) 317-1200  
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 20, 2020

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:   Eustacio Gonzalez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:   *[signature]*

Date / Fecha:   20 de agosto 2020

*Certified as a minority-owned business in the State of New York*